UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JODY CARR,<br><br>               Petitioner,<br><br>    v.<br><br>WARDEN CARLIN,<br><br>               Respondent. | Case No. 3:10-cv-00237-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are various motions filed by the parties. Having reviewed the motions, responses, replies, and the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, in the interest of avoiding further delay, the Court shall decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

The Idaho Court of Appeals summarized the facts of Petitioner Jody Carr's case as

follows:

> According to the state's evidence presented at Carr's criminal trial,
> Carr met S.B. at a bar and the two drove to a secluded location to engage in
> intercourse. When S.B. exited to the front of the vehicle, Carr ran over
> her twice. Carr believed S.B. was dead, and left the scene. Carr returned the
> next morning to make sure he did not leave any evidence and ran over
> S.B.'s body a third time to make sure she was not still alive. Carr fled to
> California with his family and was later arrested and returned to Idaho.

(State's Lodging D-4, p. 1.)

On February 4, 2004, a warrant was issued for the arrest of Petitioner for

kidnaping and aggravated battery. Petitioner was arrested by San Bernardino County

Deputy Sheriff Jerry Hughes. (State's Lodging A-4, pp. 2-3.) On February 5, 2004,Twin

Falls Police Department Detective Curtis Gambrel arrived in California. He gave

Petitioner a *Miranda* warning and interviewed him. At that time, Petitioner told Gambrel

that, on the night in question, he was very drunk and had consensual sex with S.B.

Afterward, S.B. exited the car and took off one leg of her pants and underwear to urinate.

Petitioner revved up the car, but it lunged forward when his foot slipped off the clutch,

whereupon he accidentally ran over S.B. Confused, he made a U-turn to try to find her,

and accidentally ran over her again. At that time, he determined that she was dead, and he

drove away. He returned to the scene the next morning, and, believing she might be still

alive and suffering, ran over her a third time to liberate her spirit from her body. (*Id.*, pp.

3-4 & Exhibit, Report of Jon F. Burke, Ph.D.)

**MEMORANDUM DECISION AND ORDER  - 2**

On February 10, 2004, Gambrel interviewed Petitioner a second time in the San Bernardino County Jail. Petitioner related essentially the same story. (State's Lodging A-4, p. 4.) Petitioner was then transported to the Twin Falls County Jail.

On February 16, 2004, Gambrel interviewed Petitioner a third time, whereupon Petitioner substantially changed his story and said that his best friend, Caleb Casey, gave Petitioner and S.B. some methamphetamine because S.B. had requested drugs; Petitioner and S.B. had consensual sex; Casey then tried to rape S.B.; a small fight broke out; and then Casey pushed S.B. out the car door and ran over her twice. Petitioner said he returned to the scene the next day to look for bottles and evidence, and saw S.B. lying face up, but did not run over her. (*Id.*, p. 5.)

Casey was interviewed by Detective Gambrel and Deputy Kelly Hassani on February 16, 2004, and Casey denied having anything to do with the death of S.B. (State's Lodging A-4.) Petitioner was re-interviewed on February 16, 2004, at which time he said he had lied about Casey and again told substantially the same story about the accidental death of S.B. and running over her three times. (*Id.*)

Petitioner told law enforcement officers where to search for S.B.'s body. She was found after several days, covered in snow, with her pants entirely off her left leg and bunched around her right ankle. (State's Lodging A-4, pp. 5-6.) S.B.'s autopsy revealed that she had several non-fatal blunt trauma wounds consistent with being hit and run over by a car, and that all of the wounds were suffered while she was alive. (State's Lodging A-2, p. 15. ) She was believed to have survived for several hours after the wounds were

inflicted, because she died of exposure rather than trauma. (State's Lodging A-4 p. 6; A-2, p. 13.) She had no illegal drugs in her system. (State's Lodging A-4, p. 5.)

The car Petitioner was driving when he fled to California, was towed from California to Idaho, searched, inventoried, and held as evidence for a short time. (State's Lodgings A-1, pp.37-38; C-1, p.166.) When Petitioner's family attempted to retrieve or search the car several weeks later because Petitioner asserted he had hidden exculpatory evidence in it, they found it had been crushed at an Idaho junkyard. (State's Lodging C-1, p. 143.)

Petitioner was charged with first degree murder. The court originally appointed the public defender to represent Petitioner. (State's Lodging A-1, p.21.) However, private counsel Greg Fuller appeared on behalf of Petitioner on March 9, 2005, four months prior to trial. (State's lodging A-4, pp.5-6, 49.)

Petitioner remained in custody at the Twin Falls County Jail for approximately 15 months where he alleges the conditions of confinement were unbearably harsh. To try to reduce the possibility of a fixed life sentence, he pleaded guilty to the charge on June 24, 2005, under a plea agreement that limited the State to arguing that the maximum sentence should be thirty years fixed, with life indeterminate. (State's Lodging A-3, p. 8-9.) Judgment of conviction was entered on October 17, 2005, wherein Petitioner was sentenced to a unified life sentence with twenty-five years fixed. (State's Lodging A-1, pp. 92-93.)

On direct appeal, Petitioner challenged only his sentence, arguing that it was

**MEMORANDUM DECISION AND ORDER  - 4**

excessive. (State's Lodging B-1.) The Idaho Court of Appeals affirmed Petitioner's conviction and sentence. (State's Lodging B-4.) Petitioner did not file a petition for review with the Idaho Supreme Court, and the Idaho Court of Appeals issued its remittitur on November 16, 2006. (State's Lodging B-5.)

While his direct appeal was still pending, Petitioner filed a pro se application for postconviction relief in which he asserted that his guilty plea was the product of extreme mistreatment at the Twin Falls County Jail, amounting to coercion; that numerous individuals conspired to cover up the wrongdoing; that his attorney was ineffective; and that various other constitutional violations occurred. He further alleged that he was innocent, but he pleaded guilty only to protect his family from the actual person who did commit the crime, his best friend, Caleb Casey. (State's Lodging C-1.) Petitioner's application was accompanied by a 92-page affidavit that primarily discussed the poor living conditions in the Twin Falls County Jail. (*Id.*, pp.23-117.)

The State filed a motion for summary dismissal of the post-conviction action, contending Petitioner's petition was more properly characterized as a habeas corpus petition. (*Id.*, pp.118-19.) In response, Petitioner filed a motion for counsel and a motion to strike the State's motion, contending his petition "clearly complied with Idaho Code §§19-4901 et seq." (*Id.*, pp.121-24.) The court granted Petitioner's request for counsel and entered an order notifying Petitioner of its intent to dismiss the petition. (*Id.*, pp.126-32.) Petitioner, through counsel, filed amendments to the application for post-conviction relief and responses to the notice of intent to dismiss. (*Id.*, pp. 142-44 & 158-

**MEMORANDUM DECISION AND ORDER  - 5**

69.)

A new attorney was appointed to represent Petitioner in the post-conviction matter

after his original attorney was appointed as a magistrate judge, and a new district judge

was assigned after the original presiding judge, the Honorable John Hohnhorst, passed

away. (*Id.*, pp.181-85.) The district court gave the newly-appointed attorney additional

time to review the materials previously submitted to determine whether to file any other

material. (*Id.*, pp.184-85; C-2, pp.20-23.) Counsel for Petitioner subsequently advised the

court "that he did not wish to submit any additional affidavits or briefing and that the

Court should determine whether to dismiss the amended petition or grant an evidentiary

hearing based upon the current record." (State's Lodging C-1, p.185.)

The court issued an order dismissing Petitioner's post-conviction application.

(State's Lodging C-1, pp.181-97.) In its order of dismissal, the court concluded:

> This Court has independently re-examined Judge Hohnhort's [sic] Orders
> and has considered all affidavits and arguments of counsel submitted
> subsequent to those orders, as well as the Plea Hearing Transcript, the
> Presentence Investigation, and the Sentencing Hearing Transcript. Having
> done so, this Court is satisfied that the previous Orders of the Court were
> properly entered, and, accordingly adopt them as part of its findings and
> conclusions herein. There is no evidence presented subsequent to these
> Orders which would alter the conclusion that this matter should not proceed
> to an evidentiary hearing.

(*Id.*, p.192.)

On appeal from the dismissal of his post-conviction petition, Petitioner's statement

of issues (filed through counsel) challenged whether the trial court erred in summarily

dismissing the post-conviction application without an evidentiary hearing on the

**MEMORANDUM DECISION AND ORDER  - 6**

following claims: (1) that Petitioner's guilty plea was involuntary; (2) that destruction of evidence by law enforcement officers violated Petitioner's due process rights; and (3) that Petitioner received effective assistance of counsel. (State's Lodging D-1, p. 4.) The Idaho Court of Appeals affirmed the summary dismissal of Petitioner's post-conviction petition. (State's Lodging D-4.) Petitioner filed a petition for review and supporting brief with the Idaho Supreme Court (State's Lodgings D-5, D-6), which the Idaho Supreme Court denied (State's Lodging D-7). The remittitur was issued on January 28, 2010. (State's Lodging D-8.)

The history of Petitioner's federal court actions is as follows. On October 17, 2008, while his post-conviction application was still pending in state court, Petitioner filed his first federal habeas petition, *Carr v. Henry*, Case No. 1:08-cv-00440-BLW. That petition was dismissed without prejudice after the Court concluded the petition contained only an unexhausted claim and that the appeal of his state post-conviction application was still pending. (Dkt. 22, 23 in Case No. 1:08-cv-00440-BLW.)

In 2009, Petitioner attempted to re-open that case by filing a pleading that was several hundred pages long, but he was directed instead "to file a new Petition for Writ of Habeas Corpus challenging his state court conviction under 28 U.S.C. § 2254." (Dkt. 32 in Case No. 1:08-cv-00440-BLW.)

Petitioner filed a new 133-page Petition for Writ of Habeas Corpus in the present action on May 10, 2010. (Dkt. 3.) In the Initial Review Order, the Court determined that the most efficient way to manage the case would be to allow Respondent to compare the

**MEMORANDUM DECISION AND ORDER  - 7**

pleading to the state court record to determine whether pre-answer motions on procedural grounds were appropriate. (Dkt. 9.) After reviewing the record, Respondent submitted a Motion for Partial Summary Dismissal, which is now ripe for adjudication. In response, Petitioner submitted a Motion for Summary Judgment. The parties have also submitted various other motions. The Court will first address the pending preliminary motions.

## PRELIMINARY MOTIONS

Petitioner has filed a Motion Requesting Pro-Se Leniency. (Dkt. 21). The Motion will be granted, to the extent that Petitioner's filings have been liberally construed.

Petitioner has also filed a Motion Requesting Court Hold Exhibits (Dkt. 22), wherein he notifies the Court that only one copy of his exhibits has been made, and that copy was forwarded to the Court. He requests that the Court consider the one copy for each pending issue and motion, rather than require Petitioner to file multiple copies. Good cause appearing, the Motion will be granted. All of the exhibits have been considered and will remain a part of the official record in this case, though some for a limited purpose, as described herein below.

Petitioner also filed two Motions Requesting Reconsideration of Counsel. (Dkt. 23, 39.) Petitioner argues that a mistake was made because his case was initially assigned to a United States Magistrate Judge. However, in the District of Idaho, all habeas corpus cases begin in the Magistrate Court, pursuant to General Order 237. If the parties do not consent, the case is reassigned to a District Judge, which is what happened in this matter. In any event, the initial assignment of Petitioner's case to a Magistrate Judge has nothing

to do with whether Petitioner should be appointed counsel. Having reviewed the record, the Court finds that the claims are not particularly meritorious under the high standard of law governing habeas corpus, and that counsel would not be helpful to the Court in determining the claims and issues at hand. As a result, the Motions will be denied.

Petitioner has filed a Motion Requesting Leave of the Court to Allow Petitioner to File Exhibit 6000-A-1 into the Court. (Dkt. 24.) Petitioner wishes to have this Court consider a state district court minute entry regarding the 2009 criminal conviction of Detective Curtis Warren Gambrel, to whom Petitioner gave various inculpatory statements after arrest. The minute entry documents Gambrel's guilty plea to felonies arising from incidents involving a Twin Falls area nurse, Jan Sund, who wrote prescriptions of Hydrocodone and Oxycodone to patients, including Gambrel, after which the patients would keep half of the medication and return half to Sund. Gambrel was accused of, and pled guilty to, criminal charges related to his part in the prescription drug fraud scheme. (Dkt. 34, Exhibit 2000-A.)

Petitioner states that evidence of Detective Gambrel's 2009 conviction is newly discovered, as he did not learn of the conviction until February 2011, and he could not have accessed the record at an earlier date, due to Petitioner's imprisonment.

The record of Detective Gambrel's conviction was never presented to the state court in support of Petitioner's claims during state court post-conviction proceedings, which concluded in late 2009. The United States Supreme Court has recently clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that

adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

The Court rejected, as an unwarranted "assumption," that if a petitioner could overcome

the restrictions on evidentiary hearings in § 2254(e)(2) and then present new evidence in

federal court, the deferential standards in § 2254(d)(1) do not apply. *Id*. at 1400. The

Court held instead that "that evidence introduced in federal court has no bearing on §

2254(d)(1) review." *Id*.

Based on *Pinholster*, Petitioner may not bring forward new evidence for the

federal court to review on any claims the Idaho Supreme Court adjudicated on the merits.

However, because this case is at the procedural default stage, where evidence may be

presented on the preliminary issues of procedural default, cause and prejudice, or

miscarriage of justice, the evidence will be admitted for those limited purposes only.

Accordingly, Petitioner's Motion will be granted in part and denied in part. The Court has

reviewed Petitioner's large box of exhibits and did not find Exhibit 6000-A-1.

Therefore, Petitioner may file a new copy with the Court. The Court recognizes, for

purposes of the Motion for Partial Summary Dismissal, that the exhibit is a state district

court minute entry regarding the criminal conviction of Detective Curtis Gambrel, and the

Court has reviewed the submitted news article containing the details of the Sund-Gambrel

fraud scheme. (Dkt. 34, Exhibit 2000-A.)

Petitioner has also filed a Motion for Extension of Time to Produce Evidence in

Support of All Documents Filed to this Court on 4/18/11 (Dkt. 27). This will be granted,

to the extent that (1) Petitioner may rely on any new exhibits for the limited purposes of

**MEMORANDUM DECISION AND ORDER - 10**

procedural default, cause and prejudice, and miscarriage of justice; and (2) Petitioner may rely on documents that were properly submitted to the state courts during post-conviction review for any claims to be adjudicated on the merits  in state court and to be adjudicated on the merits in federal court. For example, Petitioner has submitted his state habeas corpus pleadings as exhibits. (Dkt. 24.) Because state habeas corpus is for the purpose of challenging conditions of confinement in a jail or prison, and not for challenging criminal convictions and sentences, it may be used for issues of procedural default, cause and prejudice, and miscarriage of justice, but not for issues on the merits. In addition, Petitioner's Motion for Leave to File Excess Pages (Dkt. 37) will be granted.

Respondent has filed a Motion to Strike Petitioner's Exhibits. (Dkt. 36.) Respondent agrees that Petitioner's documents can be used to show cause and prejudice or a miscarriage of justice, but they should not be used in an analysis of the merits of the claims, because Petitioner has not shown that such items were presented to the state courts in the post-conviction matter. The Court agrees. The exhibits will not be stricken, but, as noted above, will be used for a limited purpose only in this preliminary stage of Petitioner's habeas corpus case.

## RESPONDENT'S MOTION FOR PARTIAL SUMMARY DISMISSAL

Respondent argues that the following claims are procedurally defaulted or noncognizable and therefore subject to dismissal: 1, 2 (in part), 3 (in part), 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 (in part), 22, 23, 24 (in part), 25, 26, 27, 28, 29, and 30.

**MEMORANDUM DECISION AND ORDER  - 11**

**1. Standard of Law Governing Summary Dismissal and Procedural Default**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." In such case, the Court construes the facts in a light most favorable to the petitioner. In considering dismissal, it is appropriate for the Court to take judicial notice of court dockets from state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court may deny the claim on its merits, but it cannot otherwise grant relief on unexhausted claims. 28 U.S.C. § 2254(b). The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider it, or (2) that he did not present the claim to the highest state court, but no state court remedy is available when he arrives in federal court (improper exhaustion). *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

To exhaust a habeas claim properly, a habeas petitioner must "invok[e] one

complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. at 845, giving the state courts a full and fair opportunity to correct the alleged constitutional error at each level of appellate review. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Improperly exhausted claims are deemed "procedurally defaulted." Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has *completely failed* to raise a particular claim before the Idaho courts, and there remains no opportunity to do so; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts, and there remains no opportunity to do so; or (3) when the Idaho courts have rejected a claim on an independent and adequate state procedural ground. *See Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).

**2.    Discussion**

Petitioner's State Habeas Corpus Actions

Petitioner generally argues that he exhausted his claims through his state habeas corpus action. However, Idaho law is clear that convictions cannot be challenged through state habeas corpus. *Eubank v. State*, 949 P.2d 1068, 1070 (Idaho Ct. App. 1997) (the Uniform Post-Conviction Procedure Act comprehends and replaces all other common law, statutory or other remedies, including the writ of habeas corpus, that were previously available to collaterally challenge the validity of a conviction or sentence). Petitioner may have properly brought his conditions-of-confinement claims to the attention of the Idaho

**MEMORANDUM DECISION AND ORDER  - 13**

courts–the remedy for which is injunctive relief to cure the deficient conditions–but he could not, by definition of law, bring challenges to his conviction, a cause of action that must be asserted through a post-conviction application. Accordingly, Petitioner is mistaken in asserting that a state habeas corpus action can exhaust federal habeas corpus claims and in asserting that Respondent is falsifying the lodging of the state court record by omitting the state habeas corpus action.

Claim 1

Claim 1 is that post-conviction counsel was ineffective due to an alleged conflict of interest, because counsel was being paid by Sheriff Tousley and because counsel allegedly stole Petitioner's legal documents and abandoned Petitioner's case. (Petition, Dkt. 3, p. 2.)

This claim is not cognizable. In a federal habeas corpus action, a petitioner cannot bring a claim that post-conviction counsel performed ineffectively, because there is no constitutional right to counsel in a post-conviction action. *See Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 429 (9th Cir. 1993). This claim is subject to dismissal with prejudice.

Claim 2

Claim 2 is that (a) the lead detective was involved in a drug ring, a fraud ring, and a conspiracy ring (Dkt. 3, pp. 7 & 14); (b) that the investigating detective concealed exculpatory evidence given to him by Petitioner's parents after his arrest that would have proven that Caleb Casey killed S.B.; and (c) that the prosecuting attorney was involved in

the conspiracy. (Dkt 3, pp. 9-13.)

The only part of this claim that was included in the post-conviction brief in support of the petition for review before the Idaho Supreme Court is 2(b), that Petitioner's due process rights were violated when the investigating detective concealed exculpatory evidence given to him by Petitioner's parents that would have proven that Caleb Casey killed S.B. (State's Lodging D-6, p. 11.) Accordingly, Claims 2(a) and 2(c) are procedurally defaulted.

<u>Claim 3</u>

Claim 3 is that the lead detective (a) was involved in a drug, fraud, and conspiracy ring and (b) concealed exculpatory evidence, including an alleged videotape of Caleb Casey confessing to the murder. The only part of this claim included in the post-conviction appellate brief in support of the petition for review before the Idaho Supreme Court was 3(b), that Petitioner's due process rights were violated when the lead detective concealed exculpatory evidence, including an alleged videotape of Caleb Casey confessing to the murder; 3(a) was not included and is procedurally defaulted. (State's Lodging D-6, p. 11.)

<u>Claim 4</u>

Claim 4 is that Petitioner's due process rights were violated when the detective and a sheriff's deputy (a) violated Petitioner's right to an initial appearance, (b) used delay as a tactic to coerce a confession, and (c) incited other inmates to assault Petitioner by telling the inmates that Petitioner "ratted" on the Caleb Casey conspiracy members.

The only parts of this claim that were presented to the Idaho Supreme Court in the brief supporting the petition for review are 4(b), that Petitioner's guilty plea was rendered involuntary under the due process clause as a result of the detective/jailors using delay as a tactic to coerce a confession, and 4(c), inciting other inmates to assault Petitioner by telling the inmates that Petitioner "ratted" on someone. (State's Lodging D-6, pp. 5-6.) Claim 4(a) is procedurally defaulted.

<u>Claim 5</u>

**MEMORANDUM DECISION AND ORDER  - 16**

Claim 5 is that Petitioner's (a) right to due process and (b) right to be free from cruel and unusual punishment were violated when his cell lights were left on 24 hours a day for 21 months in order to coerce him into pleading guilty. (Dkt. 3, pp. 38-39.)

The Eighth Amendment's prohibition of "cruel and unusual punishments" applies only "after conviction and sentence." *Graham v. Connor*, 490 U.S. 386, 393 & n. 6 (1989). Therefore, Claim 5(b), under the Eighth Amendment claim is subject to dismissal for failure to state a claim upon which relief can be granted.

The due process/involuntary guilty plea claim based on poor conditions of confinement, particularly lighting, was presented in the post-conviction application. (State's Lodging C-1, p. 11.) The Idaho Court of Appeals addressed this claim. (State's Lodging D-4, p. 4-6.) This claim was also presented in the petition for review before the Idaho Supreme Court. (State's Lodging D-6, pp. 5-7.) Therefore, he may proceed upon this claim under a due process theory only.

Claim 6

Claim 6 is that Petitioner's due process rights were violated when he was denied warm clothing in winter and outdoor recreation in order to coerce him into pleading guilty. (Dkt. 3, p. 39.) This claim was included in the petition for review as part of the due process/involuntary guilty plea claim. (State's Lodging D-6, pp. 5-7.) Therefore, he may proceed on this claim.

Claim 7

Claim 7 is that Petitioner's due process rights were violated when he was refused

MEMORANDUM DECISION AND ORDER  - 17

recreation, including outdoor recreation for weeks and months at a time in order to coerce him into pleading guilty. (Dkt. 3, p. 40.) This claim was included in the petition for review as part of the due process/involuntary guilty plea claim. (State's Lodging D-6, pp. 5-7.) Therefore, he may proceed on this claim.

Claim 8

Claim 8 is that Petitioner was brutally beaten by inmates after he was labeled a "rat" and a "snitch" due to his attempts at pro se litigation and filing grievances, violating his rights against coercion and retaliation. (Dkt. 3, p. 42 & 3-1, p. 2.)

To the extent that Petitioner is alleging that his plea was involuntary because jailors caused him to be beaten by other inmates after being called a "rat" and "snitch," that claim is already included in Claim 4, and cannot be duplicated in another separate claim. His other theories were not included in his briefing in support of the petition for review on post-conviction appellate review and are procedurally defaulted. (State's Lodging D-6, p. 6.)

Claim 9

Claim 9 is that Petitioner was denied legal materials and law library access for 21 months. (Dkt. 3-1, p. 43.) This claim was not included in the brief in support of the petition for review, and. hence, is procedurally defaulted.

Claim 10

Claim 10 is that Petitioner's right to have attorney-client privileged conversations with his counsel was impaired by the fact that the jail visitation rooms were not sound-

**MEMORANDUM DECISION AND ORDER - 18**

proof; as a result, Petitioner alleges he could not develop evidence to demonstrate that he did not commit the crime. (Dkt. 3-1, p. 43.)

This was included in the brief supporting the petition for review under the claim that jail personnel interfered with counsel's assistance. (State's Lodging D-6, p. 15.) As a result, he may proceed with this claim.

Claim 11

Claim 11 is that Petitioner asserts that he was "arrested, detained, and held incommunicado for (21) months" in violation of his First, Fifth, Sixth, and Fourteenth Amendment rights. (Dkt. 3-1, pp. 7-8 & 10.)

This claim was not included in the brief supporting the petition for review. (State's Lodging D-6.) Therefore, it is procedurally defaulted.

Claim 12

Claim 12 repeats the allegations from Claims 9, 10, and 11: that Petitioner was "held incommunicado" and denied access to his attorneys. (Dkt. 3-1, pp. 10-12.) Because these claims are addressed by Petitioner's other claims, they cannot be repeated as another separate claim.

Claim 13

Claim 13 is that Petitioner was denied medical attention for different health conditions and injuries, and that he was placed in detention for 400 days over his insistence that he be permitted to call his attorney, allegedly in violation of his (a) Fifth/Fourteenth, (b) Fourth, (c) Eighth, and (d) Ninth Amendment rights. (Dkt. 3-1, p. 14.)

The brief in support of the petition for review alleged that the due process/involuntary guilty plea claim was based, in part, on failure to provide proper medical care to Petitioner. (State's Lodging D-6, pp. 5-6.) The claim that Petitioner was placed in insolation was also included. (*Id.*, p. 6.) Therefore, he can proceed on Claim 13(a) (due process theory only), but not on Claims 13(b),(c) and (d).

Claim 14

Claim 14 is that Petitioner was denied his right to personal safety at the jail, and that he was removed from protective custody and placed back in the general population for the purpose of causing him physical harm after he "sought litigation against the Sheriff's Department and the detective investigating the murder. (Dkt. 3-1, p. 17.)

This claim was not included in the brief in support of the petition for review, and, thus, it is procedurally defaulted.

**MEMORANDUM DECISION AND ORDER  - 20**

Claim 15

Claim 15 is that the Sheriff's Department retaliated against Petitioner (a) by calling him names they knew would cause other inmates to attack him because he refused to plead guilty, (b) because he was trying to contact and hire an attorney, and (c) because he filed grievances against them. (Dkt. 3-1, p. 18.)

This claim was included in the brief in support of the petition for review to the extent that Petitioner alleged that his guilty plea was coerced because jailors labeled him a "rat" and "snitch", but that Claim is already asserted in Claim 4, and cannot be duplicated here. Petitioner's petition for review on post-conviction appellate review also included the claim that jailors interfered with counsel's assistance by interfering with his right to hire an attorney. He may proceed on 15(b) under a due process theory only, but not on 15(a) or 15(c), or on First, Eighth, or Ninth Amendment theories.

Claim 16, 17 & 18

In these claims, Petitioner alleges retaliation and denial of his right to personal safety and medical attention. He states that he was removed from protective custody, after which he was stabbed within 20 minutes and denied medical attention.

Petitioner may not proceed on these claims under a retaliation theory because they were not included in the brief in support of the petition for review. (State's Lodging D-6.)

**MEMORANDUM DECISION AND ORDER  - 21**

Claim 19

Claim 19 is that Petitioner was housed in unconstitutional conditions as a pretrial

detainee, including denial of food, showers, appropriate cell temperatures, toilet paper,

religious services, toothpaste, and soap. Petitioner may proceed on these claims only

under his theory that his due process rights were violated when jailors attempted to coerce

him to plead guilty by depriving him of humane living conditions. (State's Lodging D-6,

pp. 5-7.)

Claim 20

Claim 20 is that Petitioner was denied access to the courts in retaliation for his

attempts to hire outside counsel. This claim was not included in the brief in support of the

petition for review, and. hence, is procedurally defaulted. To the extent that the claim

includes jailor's interference with assistance of counsel, that issue is already asserted in

Claim 15, and cannot be duplicated in a different claim.

Claim 21

Claim 21 is that Petitioner was coerced by acts of cruel and unusual punishment,

duress, and physical force, which he alleges amounts to torture, to plead guilty. He alleges

that he was placed in segregation and left with no food for six days. On the sixth day, he

was allowed to meet with his attorney, who advised him that he was to plead guilty that

day, and who did not care that Petitioner had been deprived of food, and who did not help

Petitioner regarding the alleged civil rights violations.

Petitioner further alleges that, after this meeting, a deputy told him that if he said

**MEMORANDUM DECISION AND ORDER - 22**

what he was advised to say after entering a guilty plea, the deputy would feed him. He alleges that he was transported to court to enter his guilty plea, where he was forced to wear a "taser belt," and told that if he did not answer the questions as instructed by his lawyer, he would be shocked with the taser for eight seconds.

Petitioner alleges that the sheriff told him the judge who accepted the plea was a "contract attorney." Petitioner alleges that if the judge was a contract attorney, then the law was broken. Petitioner alternatively alleges that if the sheriff was incorrect about the judge, then he [the judge] was a part of the conspiracy to commit fraud, forgery, perjury, and conspiracy to obstruct justice.

These claims were not presented in the brief in support of the petition for review. (State's Lodging D-6.) To the extent that Petitioner alleges that he was denied food to coerce him to plead guilty, that claim is covered in Claim 19, and cannot be duplicated in another claim.

Claim 22

Claim 22 is that Petitioner's right to access to the courts was blocked and that he was subjected to retaliation, interference by government officials, and theft and destruction of his pleadings and other court documents in violation of the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments.

This claim was not included in the brief in support of the petition for review, and. hence, is procedurally defaulted. To the extent that the claim includes jailor's interference with assistance of counsel, that issue is already asserted in Claim 15, and cannot be

**MEMORANDUM DECISION AND ORDER  - 23**

duplicated in a different claim.

Claim 23

Claim 23 is that government officials stole and/or destroyed additional "pleadings," including a second motion to withdraw his plea, a petition for writ of habeas corpus, a "tort claim," and a federal § 1983 civil rights complaint. As a result, these pleadings were not filed, with the exception of the habeas corpus petition, which he asserts was delayed by officials by moving him to another facility to render the petition moot.

This claim was not included in the brief in support of the petition for review, and, hence, is procedurally defaulted.

Claim 24

Petitioner alleges that his counsel was ineffective for (a) filing a motion to have him held at the Twin Falls County Jail, (b) failing to make sure Petitioner had an initial appearance, (c) failing to file a motion to change venue, (d) failing to file a motion to suppress evidence, (e) failing to raise a conflict of interest, and (f) allowing the Sheriff's Department to monitor and record attorney-client visits.

Petitioner did not include in his state district court pleadings a claim of ineffective assistance of trial counsel for failing to file a motion to suppress his confessions. (State's Lodging C-1.) The Idaho Court of Appeals did not address such a claim specifically because of the failure to raise it initially in the district court. (State's Lodging D-4, pp. 8-9.) Therefore, Claim 24(d) is procedurally defaulted for failure to properly present the

**MEMORANDUM DECISION AND ORDER - 24**

claim, and he may not proceed on it.

Petitioner did not include in his petition for review before the Idaho Supreme Court Claims 24(a), 24(b), or 24(e); as a result, these claims are also procedurally defaulted.

Petitioner included a claim that trial counsel was ineffective for failing to file a motion to change venue at all levels of the state court system. *(See D-6, p. 15.)* He also properly presented at all levels a claim that trial counsel performed ineffectively when he allowed jailors to monitor and record attorney-client privileged calls. (*Id*. p. 15.) Petitioner may proceed on Claims 24(c) and 24(f) only.

Claim 25

Claim 25 is that counsel was ineffective as a result of failing to take action on the prosecution's *Brady* violations and interference by government officials. Petitioner alleges that his counsel also forced him to plead guilty and would not let him see his own discovery except through blackmail or bribery, and, when Petitioner could pay no more money to counsel to see his own discovery, counsel withheld discovery from him altogether.

Petitioner failed to raise these claims in the briefing in support of the petition for review, which was concerned only with the failure to file a motion for change of venue and failure to "keep confidences." (State's Lodging D-6.) Petitioner may not proceed on these claims.

Claim 26

**MEMORANDUM DECISION AND ORDER - 25**

Petitioner alleges that his due process and equal protection rights were violated when the judge who accepted his guilty plea also functioned as his attorney, according to an affidavit from the Sheriff. In addition, Petitioner claims that these facts are a violation of the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments.

These claims were not brought in the petition for review, and, as a result, they are procedurally defaulted.

<u>Claim 27</u>

Claim 27 alleges that Petitioner's proceedings amounted to a farce and mockery of justice, based on all of the foregoing facts. This claims was not brought in the petition for review and are procedurally defaulted.

<u>Claim 28</u>

Claim 28 alleges that Petitioner was prejudiced by (a) counsel's failure to investigate, (b) the fact that Petitioner was actually innocent and yet convicted, and (c) the State's *Brady* violations.

This claim was brought in part in the petition for review, only as a claim that trial counsel failed to investigate the crime scene. (State's Lodging D-6, p. 15 (referencing D-3, p. 6 and D-1, pp.19-20.)) Petitioner may proceed only on Claim 28(a), regarding failure to investigate the crime scene.

<u>Claim 29</u>

Claim 29 alleges that government officials interfered with and withheld Petitioner's attempts to *withdraw* his guilty plea from the courts. The supporting facts are

**MEMORANDUM DECISION AND ORDER  - 26**

that government officials deprived him of food and coerced him to plead guilty.

This is not included in his briefing in support of his petition for review, except to the extent that Petitioner has alleged that jailors deprived him of food to cause him to plead guilty. However, because this claim is included in Claim 19, it may not be brought a second time.

Claim 30

Claim 30 appears to be a cumulative error type of claim, alleging that "[a]ll issues in this Petition were used to gain an unconstitutional conviction and to keep it!" (Dkt. 3-3, p. 3.) This claim was not included in his petition for review, and it is procedurally defaulted.

**3.   Cause and Prejudice**

If a petitioner's claim is procedurally defaulted, the federal district court cannot hear the merits of the claim unless a petitioner meets one of two exceptions: a showing of adequate legal cause for the default and prejudice arising from the default; or a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that

the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

In support of a cause and prejudice argument, Petitioner argues that he tried to develop his claims and show his evidence, "but the State's conspiracy cover-ups have thwarted [his] efforts." To the contrary, it appears that Petitioner's post-conviction appellate counsel carefully reviewed his case and selected the arguments believed to be the strongest on appeal, which is an appropriate strategy; in other words, there is no evidence that claims were omitted from the appellate briefing due to a conspiracy or even negligence.

To the extent that Petitioner's briefing can be construed to assert that his direct appeal appellate counsel failed to raise any claims on direct appeal, that claim cannot be used as "cause" because it was not itself properly exhausted in the post-conviction review process. *See Edwards v. Carpenter*, 529 U.S. 446, 454 (2000).

To the extent that Petitioner alleges that his initial post-conviction counsel handled his post-conviction application poorly (Petition, Dkt. 3, pp. 2-3), that does not constitute cause. A petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, any errors of his counsel during the post-conviction action cannot serve as a basis for cause to excuse Petitioner's procedural default of his claims. *See Coleman v. Thompson*, 501 U.S. 722,

**MEMORANDUM DECISION AND ORDER  - 28**

752 (1991) ("a petitioner cannot claim constitutionally ineffective assistance of counsel in [post-conviction] proceedings").

Accordingly, adequate cause has not been shown by Petitioner to excuse the procedural default of his claims, and none is readily apparent from the record.

**4.      Miscarriage of Justice**

If a petitioner cannot show cause and prejudice, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To show a miscarriage of justice, Petitioner must make a colorable showing of factual innocence, *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995), supporting his allegations of constitutional error with new reliable evidence that was not presented at trial, *Schlup v. Delo*, 513 U.S. 298, 324 (1995). For example, types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

Where the defendant pleaded guilty and did not have the evidence in his case evaluated by a jury, the petitioner must show that, based on all of the evidence, "it is more likely than not that no reasonable juror would have found Petitioner guilty. . . ." *Van*

**MEMORANDUM DECISION AND ORDER  - 29**

*Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. at 327.

Here, Petitioner adamantly proclaims his innocence. He alleges that he and S.B. went to Caleb Casey's home because S.B. wanted methamphetamine; that Casey killed S.B.; and that the next day, Petitioner went back to the scene to pick up evidence, and saw S.B.'s body lying face up.

Some of the physical evidence is contrary to Petitioner's story that Casey Caleb killed S.B. Photographs of the body frozen in the snow demonstrate that S.B.'s body was lying face down, not face up. (State's Lodgings A-7, A-8, A-9.) S.B.'s autopsy showed she had no methamphetamine in her system, contradicting Petitioner's story that they went to Casey's home to obtain methamphetamine for S.B.  (State's Lodging A-4, p. 5.)

To supplement the Caleb Casey version, Petitioner later alleged a widespread conspiracy spanning from Twin Falls, Idaho to San Bernardino County, California, including following: Detective Gambrel was under the influence of prescription opiates when he interviewed Petitioner. Gambrel was participating in a criminal drug-fraud and conspiracy ring, and was associated with the person who actually committed the murder.[1] Gambrel framed Petitioner for the murder through his drug crime ring.

Petitioner's parents gave Gambrel a box of jewelry that Caleb Casey and Petitioner

---

[1] In many places in the state court filings and this record, Petitioner states that "Caleb Casey" is the true murderer of S.B., and, in other places, he vaguely refers to "the person who actually murdered the victim," or words to that effect. The Court is assuming that Petitioner is always referring to Caleb Casey; if Petitioner is alternatively alleging that another person killed S.B., he should clarify that at the summary judgment stage of proceedings.

**MEMORANDUM DECISION AND ORDER  - 30**

had earlier stolen from various Twin Falls area businesses. (Dkt. 34, Exhibit 3000-500, Wayne Basye Affidavit.) The jewelry had been given to Petitioner's parents by Petitioner's wife, who said that "she did not want any part of it," and that "Caleb Casey and [Petitioner] had gotten it."  (*Id*., Exhibit 3000-200.)

Petitioner asserts that the jewelry was handled by Casey right after the murder of S.B., and Casey left his fingerprints *and* S.B.'s blood on the jewelry. Twin Falls Detective Bill Hanchey gave the jewelry back to Samuel's Jewelers because he wanted to cover up the crimes of Gambrel and other Twin Falls police officers (or, perhaps, he gave it back because that is who owned the jewelry). (Dkt. 34, Exhibit 6004, Petitioner's state petition for writ of habeas corpus, and Exhibit 3000-500, Basye Affidavit.) Petitioner alleges that the jewelry was a pay-off from Casey to Petitioner for his silence regarding the murder, and that some of the jewelry "had to have come from Caleb Casey to Gambrel as further 'pay-off' as it was not in the 'box' when Petitioner's parents gave it to Gambrel." (Dkt. 34, Exhibit 6004, p. 11.) Petitioner alleges that the items in the box belonged to Caleb Casey's business partners and associates, and could have been used at Petitioner's trial to show a pattern or habit of criminal behavior, assisting "in building a defense for Petitioner and proving the guilt of Caleb Casey to multiple crimes including the murder." (*Id*. at p. 12.)

In an amended version of the state petition for writ of habeas corpus," (Dkt. 34, Exhibit 6001), Petitioner elaborates on the conspiracy story. He specifies that the box of jewelry contained "hundreds of thousands of dollars worth of assorted rare, antique, and

**MEMORANDUM DECISION AND ORDER  - 31**

ancient monies, rare and ancient coins, and a large hoard of jewelry," many of which were stolen from Samuel's Jewelry, the Kimberly/Eastland auction house, and the Main Street antique store. The box also contained items that had been acquired by Petitioner throughout the course of his life. Elsewhere, Petitioner describes the box as containing "jewelry and other valuables worth approximately half a million dollars." (Petition, Dkt. 3, p. 9.) Contrarily, Petitioner's stepfather was sure that the box did not contain very much "luxury jewelry," but instead contained "a couple of pieces of jewelry, coins, baseball cards and small knives and other small but not expensive pieces." (Dkt. 34, Exhibit 3000-500.)

Petitioner further alleges he told Detective Gambrel the false accident story because he had been instructed to do so by the actual guilty party, and it was the only thing he could do to keep himself and his family safe. Petitioner had been arrested in San Bernardino County in California, which he alleges is the "hometown" of Caleb Casey. Petitioner "had to admit to the crime and give the false testimony due to the fact that the guilty party was a long term drug manufacturer and dealer and that many of the officers in San Bernardino were corrupt and on the guilty party's payroll." Petitioner alleges that the 26-year-old guilty party has millions of dollars and no job, but owned a $300,000 home in Idaho and a home in southern California, both of which were filled with millions of dollars of belongings. Petitioner told Gambrel that the guilty party was paying one of the local law enforcement officers to keep the heat off of himself, and Gambrel told Casey that Officer Hassani (who helped interview Casey) was an ex-San Bernardino officer who

**MEMORANDUM DECISION AND ORDER  - 32**

moved to Twin Falls, and that Petitioner shouldn't trust Hassani. (*Id.*, pp. 7-9.)

After Petitioner found out that Gambrel told Caleb Casey that Petitioner had implicated Casey as the murderer, Petitioner decided he had to take the blame for S.B.'s death to protect his wife's and children's lives. (*Id.*, p. 9.)

Petitioner alleges that Detective Gambrel, who was later charged in a conspiracy of fraudulently obtaining prescription pain killers, was in a drug scheme with Caleb Casey, (although Detective Gambrel's scheme arose from prescription pain killers that were obtained through a pharmacy and then returned to the prescribing nurse, and Casey apparently sold methamphetamine, which appear unrelated). Wayne Basye, Petitioner's step-father, adds to this version of events, by commenting that Caleb Casey's live-in girlfriend used the type of drugs that were involved in the Sund-Gambrel prescription drug fraud conspiracy. (Dkt. 34, Exhibit 3000-500.)

Petitioner alleges that Caleb Casey quickly sold his house and left town to avoid being held responsible for the murder of S.B. (although it may be just as likely that he left town as a result of the stolen jewelry issues). Petitioner also alleges that the car involved in the killing was crushed to hide evidence of Casey's involvement. (However, there is no evidence in the record from the junkyard operator or any law enforcement officer regarding why the car was crushed.)

While Petitioner supports his elaborate conspiracy theories by weaving together a string of circumstances, some of which are, indeed, questionable, such as the prescription drug problems of the lead detective and the quick destruction of the car, the fact of the

**MEMORANDUM DECISION AND ORDER - 33**

conspiracy itself–whether there was a widespread agreement among individuals to frame Petitioner for the crime he did not commit–is unsupported and based on mere speculation.

Another tangential actual innocence theory related to the overall conspiracy claim is that Petitioner alleges his conditions of confinement were made so difficult by jailors that it forced him, an innocent man, to plead guilty to first degree murder. The Court takes judicial notice that Petitioner was not able to prove his conditions-of-confinement claims in a federal civil rights action, *Carr v. Tousley*, Case No. 1:06-cv-00125-JLQ.[2] For example, the undisputed facts in that action showed that the unbearable 24-hour lights of which Petitioner complained consisted of two 40-watt bulbs during the day, and one 10-watt bulb at night. (See Dkt. 171, p. 12, in Case No. 1:06-cv-00125-JLQ.)

Petitioner also asserts that he pleaded guilty to protect his family from being harmed by Caleb Casey. However, if that were the case, Petitioner does not explain why he did not *actually* keep the Caleb Casey story secret in order to protect his family, but attempted to lay blame on Caleb Casey as soon as Petitioner was returned to Twin Falls from California. Petitioner alleges that, once he was imprisoned, he felt "safe" to go after Casey, but what about his family, left alone with Casey in the outside world?

This story does not completely make sense; rather, the record tends to show that Petitioner periodically revealed the "secret" to attempt to gain freedom, which means that

---

[2] Petitioner also brought his claims in a state habeas corpus action, but the court determined that the claims were moot because of his transfer to IDOC custody, and the remainder were barred because habeas corpus cannot be used to challenge a conviction or sentence. (Dkt. 34, state habeas corpus pleadings and orders.)

**MEMORANDUM DECISION AND ORDER - 34**

Petitioner paved the way several times for Caleb Casey to harm Petitioner's family. Petitioner had no way of knowing whether Caleb Casey would be arrested and jailed upon Petitioner's initial or later accusations, or whether Casey would have been arrested and yet bonded out, giving him opportunity to harm Petitioner's family immediately. Therefore, Petitioner's allegation that his false confession was for the purpose of protecting his family seems disingenuous.

Another oddity with Petitioner's story is that he alleges he had hidden in his car a videotape of Caleb Casey confessing to the murder of S.B. and threatening the lives of Petitioner and his family if Petitioner were to "snitch." (Petition, Dkt. 3, p. 19.) Petitioner told his step-father that the hidden videotape was his "ace in the hole." (Dkt. 34, Exhibit 3-000-200.) However, if Petitioner had such evidence, surely he would have pointed authorities to it immediately– to help protect his family–the first time he told the Caleb Casey story. In addition, Petitioner has never clearly outlined (1) the details of the conversation on tape; (2) why Casey confessed; (3) exactly when Casey confessed; or (4) how Petitioner was able to hold a conversation with Casey and at the same time surreptitiously capture it on videotape.

More telling is the number of different times and different contexts in which Petitioner admitted responsibility for S.B.'s death, including (1) in the first pretrial confession; (2) in the third pretrial confession; (3) in discussions with his lawyer;[3] (4)

---

[3] At the plea colloquy, Petitioner's attorney answered the court's question as to whether the in-custody statements were constitutionally valid, and Petitioner's attorney responded:

during a psychological interview by Dr. Jon Burke; (5) in the presentence investigation report;[4] (6) during the change-of-plea colloquy, when the Court questioned Petitioner under oath about having committed the killing (A-2, pp. 143-144); and (7) during the sentencing hearing, when Petitioner again asserted under oath that he killed S.B., and he apologized to her family.

After the prosecution played for the sentencing judge the second police interview with Petitioner, where Casey was blamed for the murder (with the prosecution's purpose to show that Petitioner lied and did not want to take responsibility for the killing at that time), Petitioner voluntarily stated the following at the sentencing hearing when given an opportunity to speak:

---

> Yes, there were several [in-custody statements]. They were videotaped and they were audiotaped and we have been though those many times and discussed them many times and I feel that everything, the totality of the circumstances, the facts brought out by those would justify his plea at this time.

(State's Lodging A-3, p. 11.)

[4] The Presentence Investigation Report states:

> Jody told me that he has always gotten himself out of trouble in the past by lying, cheating, running or even buying his way out. He said he knew from the second this crime occurred that there was no way out and he said he did not know how to deal with the incident.
>              * * *
> The Defendant advised he did not expect to be charged with Murder in this incident, and he said that he tried to lie his way out when he was initially charged. The defendant said that he made up a story about his friend, Caleb, as he said he was "still tripping and not ready to deal with the loss of a life." He also said that he tried to "snitch" his way out as well so that he could be "cut some slack." he admitted that he also considered escaping from the jail at a time so that he would not be held accountable." (State's Lodging A-4, p. 18.)

The Court:   Mr. Carr, do you wish to say anything?

Petitioner:   Yes, sir. I can't face it. I wish I could. I'm sorry isn't going to cut nothing. I had a very bad accident. I ran from that out of fear and in a cowardly fashion. I'm sorry. I can't make it better. I just – there was times that I lied to the detective because I just got off the phone with my kids and they were crying for me to come home. I can't send [S.B.] home to her kids. I tried real hard in life even though a lot of my decisions were stupid. I don't know all the panic disorder stuff and all that kind of stuff. I do know that in a blink of an eye something can happen sometimes where you can't undo it. I had no idea that she was alive and I just ran to save my own children. I didn't think anything about her or anyone else. I wish I could fix it. I can't. I'm sorry to her family. I'm sorry to my family, and that's all I really have.

(State's Lodging A-2, pp. 143-44.) While at sentencing Petitioner told the judge and S.B.'s family that he made up the *Caleb Casey story* in order to get out of jail and return to his children, he now asserts that threats from Casey, his conditions of confinement, and his feelings after talking to his children prompted him make up the *accidental death story*.

Petitioner had every opportunity to tell his lawyer and the Court that jailors purposely were making his conditions of confinement so difficult that he would plead guilty, and that he did not accidentally kill S.B., but rather Caleb Casey killed her. But Petitioner reiterated again and again his responsibility for the crime. During the plea colloquy, the following discussion occurred:

The Court:   Is there or are you suffering from any mental or psychological problems that make it hard for you to understand these proceedings?

**MEMORANDUM DECISION AND ORDER  - 37**

Petitioner:      No, sir.

The Court:      Is there anything else going on in your life that affects
                your ability to make a reasoned and informed decision
                today?

Petitioner:      No, sir.

The Court:      Have you had enough time to discuss this matter with
                Mr. Fuller [Petitioner's counsel]?

Petitioner:      Yes, sir.

The Court:      Have you had adequate access to your lawyer to
                discuss the law and the facts of this case?

Petitioner:      Completely.

The Court:      Has your attorney explained the rights that you're
                giving up by this plea of guilty?

Petitioner:      Yes, sir.

The Court:      Has he talked about defenses that you could present to
                the charge?

Petitioner:      Yes, sir, he has.

The Court:      Is there anything you've wanted your attorney to do for
                ask him to do to help you with your case that he hasn't
                done?

Petitioner:      No, sir, not at all.

The Court:      Are you satisfied with your attorney's representation?

Petitioner:      Completely.

The Court:      Have you gone over discovery with your attorney?

Petitioner:      Yes, sir.

**MEMORANDUM DECISION AND ORDER  - 38**

| | |
|---|---|
| The Court: | Did you understand what was discussed? |
| Petitioner: | Yes, sir. |
| The Court: | Do you request any additional discovery be done in your case? |
| Petitioner: | No, sir, I do not. |

(State's Lodging A-3, pp. 6-7.)

Regarding the voluntariness of Petitioner's plea, the following was discussed at the change of plea hearing:

| | |
|---|---|
| The Court: | Has anyone threatened you or anyone close to you in order to get you to enter a plea of guilty here today? |
| Petitioner: | No, sir. |
| The Court: | Is your decision to plead guilty a voluntary decision? |
| Petitioner: | Yes, sir, it is. |

(State's Lodging A-3, p. 10.)

Regarding the underlying facts supporting the guilty plea, Petitioner, who was under oath, elaborated on the incident as follows:

| | |
|---|---|
| The Court: | Tell me why you're guilty. |
| Petitioner: | Your Honor, I had an accident and then after the accident, no being in my right state of mind, which I hope that later on the court will take into consideration, I willingly ran over the defendant, the victim. |
| The Court: | Willingly ran over her as you were operating a motor vehicle? |

**MEMORANDUM DECISION AND ORDER - 39**

| | |
|---|---|
| Petitioner: | Yes, sir. |
| The Court: | And this was [S.B.]? |
| Petitioner: | Yes, sir, it was. |
| The Court: | And you did willfully with premediation – |
| Petitioner: | Yes, sir. |
| The Court: | – run over her? |
| Petitioner: | Yes, sir. |
| The Court: | And this was in a remote location in the middle of the night? |
| Petitioner: | It was the next morning, sir, but yes, it was a remote location. |

(*Id.*, pp. 13-14.)

Specifically as to cases in which convicted felons challenge their guilty pleas, the

United States Supreme Court stated:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

In this case, Petitioner took responsibility not once, but at least seven times,

including in the most solemn of circumstances under oath–the change-of-plea colloquy

**MEMORANDUM DECISION AND ORDER  - 40**

and at sentencing when addressing S.B.'s surviving family members. Petitioner also admitted several times that the Caleb Casey version was a lie, crafted to gain Petitioner's freedom. Considering the entire record, including Petitioner's submissions that have been admitted only in the procedural default context, the Court finds that there is insufficient evidence in the record to show actual innocence to excuse the default of Petitioner's claims–Petitioner has failed to show that it is more likely than not that no reasonable juror would have found Petitioner guilty if he had proceeded to trial.

**5.      Conclusion**

In determining whether the claims are procedurally defaulted, the Court has considered mainly whether Petitioner raised the claims in his petition for review in the post-conviction action. There are other potential grounds for procedural default, such as whether Petitioner's destruction of evidence claims are barred because they should have been brought on direct appeal rather than in the post-conviction relief setting (D-4, pp. 7-8), that the Court will not address at this time, because it appears to be more efficient to address the merits of the claims. In addition, Petitioner will not be permitted to assert the same claims more than once. Finally, Claim 1 will be dismissed for failure to state a claim upon which relief can be granted.

Accordingly, the Court finds and concludes that the following claims are subject to dismissal: Claims 1, 2(a), 2(c), 3(a), 4(a), 5(b), 8, 9, 11, 12, 13(b), 13(c), 13(d), 14, 15(a),

15(c), 16, 17, 18, 20, 21,[5] 22, 23, 24(a), 24(b), 24(d), 24(e), 25, 26, 27, 28(b), 28(c), 29, and 30.

The following claims will proceed to a merits review: 2(b), 3(b), 4(b), 4(c), 5(a) (due process theory only), 6, 7, 8(a), 10, 13 (due process theory only), 15(b) (due process theory only), 19 (due process theory only), 24(c), 24(f), and 28(a).

## PETITIONER'S MOTION FOR SUMMARY JUDGMENT

Petitioner has filed a Motion for Summary Judgment. (Dkt. 19.) Petitioner alleges that because Respondent did not brief the merits of the claims, Petitioner is entitled to relief on the merits. However, the Initial Review Order specifically provides for a two-step procedure: first, addressing procedural bars, and, second, addressing the merits. As a result, Petitioner's motion will be denied as premature. He may re-assert it as set forth below.

## ORDER

**IT IS ORDERED:**

1.     Respondent's Motion for Partial Summary Dismissal (Dkt. 15) is **GRANTED in part and DENIED in part**, with the following claims being dismissed:  Claims 1, 2(a), 2(c), 3(a), 4(a), 5(b), 8, 9, 11, 12, 13(b), 13(c), 13(d), 14, 15(a), 15(c), 16, 17, 18, 20, 21, 22, 23, 24(a), 24(b), 24(d), 24(e), 25, 26, 27, 28(b), 28(c), 29, and 30.

2.     Petitioner's Motion for Summary Judgment (Dkt. 19) is **DENIED** without prejudice.

---

[5] Although Respondent did not request dismissal of all subparts of Claim 21, the Court finds that Claim 21 is a duplicate of Claim 19 and is subject to dismissal for that reason.

**MEMORANDUM DECISION AND ORDER  - 42**

3.      Petitioner's Motion Requesting Pro-Se Leniency (Dkt. 21) is **GRANTED**, to the extent that Petitioner's filings have been liberally construed.

4.      Petitioner's Motion Requesting Court Hold Exhibits (Dkt. 22) is **GRANTED**.

5.      Petitioner's Motions Requesting Reconsideration of Counsel (Dkt. 23, 39) are **DENIED**.

6.      Petitioner's Motion Requesting Leave of the Court to Allow Petitioner to File Exhibit 6000-A-1, a state district court minute entry in the criminal case of Detective Curtis Gambrel, into the Court (Dkt. 24) is **GRANTED** in part, to the limited extent set forth above. Petitioner is ordered to file a separate copy of Exhibit 6000-A-1 with the Court.

7.      Petitioner's Motion for Extension of Time to Produce Evidence in Support of All Documents Filed to this Court on 4/18/11 (Dkt. 27) is **GRANTED**. The Court has considered Petitioner's evidence to the extent set forth above.

8.      Respondent's Motion to Strike Petitioner's Exhibits (Dkt. 36) is **DENIED**.

9.      Petitioner's Motion for Leave to File Excess Pages (Dkt. 37) is **GRANTED**.

10.     The parties shall file any summary judgment motions on the remaining claims no later than 120 days after entry of this Order: Claims 2(b), 3(b), 4(b), 4(c), 5(a) (due process theory only), 6, 7, 8(a), 10, 13 (due process theory only), 15(b) (due process theory only), 19 (due process theory only), 24(c), 24(f), and 28(a).

DATED:  **March 1, 2012**

Honorable Edward J. Lodge
U. S. District Judge